IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:21-cr-60-TSE-2 |
| v. | ) | |
| | ) | The Honorable T.S. Ellis, III |
| KESHAWNA HOWARD, | ) | |
| | ) | Sentencing: December 3, 2021 |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States of America, through undersigned counsel and in accordance with Title 18, United States Code, Section 3553(a) and the United States Sentencing Commission Guidelines Manual (the "Guidelines"), hereby provides its position with respect to sentencing for the defendant, Keshawna Howard. The United States requests that this Court adopt the findings of the Pre-Sentence Investigation Report ("PSR"), sentence Defendant to three years of supervised probation, with a special condition requiring a period of home detention, and order that she pay restitution in the amount of $4,900.

The conspirators, including one whom this Court has already sentenced, conspired to steal mail in bulk from United States Postal Service ("USPS") collection boxes in Arlington County, Virginia, using an unlawfully obtained "arrow key," property of the USPS. They then systematically sorted through the mail for cash, gift cards, checks, and personal identifying information ("PII"). Cash and gift cards were divvied up. The checks, some issued by local businesses and others by Arlington residents, some for large amounts meant to pay down a home equity line and others for smaller amounts, were altered to reflect new amounts and/or payee information, thereby allowing members of the conspiracy to cash them for their own benefit. Some of these fraudulent checks were cashed into the bank accounts of "mules," individuals who agreed

1

to allow their accounts to be used as depositories. Others were cashed at automated teller machines ("ATMs") by members of the conspiracy. To members of the conspiracy, the mail's only value was in how it could make them money, as evidenced by their disposal of, among other things, personalized cards sent for special occasions, invitations to events, mail-in ballots and notices, tax documentation, and letters from friends and family members. The same was not true for those who sent or expected to receive it and who placed their trust in the postal service to carry their legitimately earned funds, payments, or news of momentous life events to others.

Defendant participated in the scheme largely on the back end, after co-defendants, including her boyfriend at the time, Aaron Johnson, had stolen the mail. She assisted co-conspirators by sorting through mail, obtaining PII and recording it on a ledger so that it could later be used (including on fraudulent identification cards), and accompanying Johnson during several trips wherein he deposited fraudulently altered checks. ECF No. 64 at 7-13. Specifically, on January 16, 2020, law enforcement arrested Defendant and Johnson at a bank in Hagerstown, Maryland, after Johnson attempted to cash a fraudulently altered check in the amount of $21,000. *Id*. at ¶ 30. The check, which had been stolen from a USPS collection box outside of the Arlington North Post Office, had been altered so that it was made payable to "John Martian," an alias used by Johnson, and would be drawn on the business account of victim J.M. *Id*. At the time of the arrest, Johnson possessed a fraudulent Pennsylvania identification card issued to "John Martian." *Id*. Defendant and Johnson also possessed two additional business checks issued by Maryland-based businesses; one of the checks had been altered so that it was made payable to Defendant. *Id*. at ¶ 57. Moreover, Defendant possessed a fraudulent identification card in the name of victim S.K. *Id*.

Upon full consideration of the Section 3553(a) factors, the United States submits that a sentence of three years' probation, with a special condition requiring home confinement, is appropriate and reasonable. Such a sentence would reflect the seriousness of the scheme in which Defendant participated, serve as just punishment for her particular role in the criminal conduct, promote respect for the law, and serve to specifically deter Defendant, who has a minimal history of criminal conduct, from committing future crimes, as well as to generally deter others from attempting similar mail theft and bank fraud schemes.

I.   **Factual and Procedural Background**

The investigation into the scheme Defendant participated in began in early January 2020 after several residents of Arlington, Virginia, reported to the postal service that their outgoing mail, which they had placed in a USPS collection box, either had not reached its destination or contained personal checks that had been altered and cashed by someone other than the original payee. *See* Case No. 1:21-cr-174 (case of co-conspirator Malcolm Ward), ECF No. 2 (Affidavit in Support of Complaint) at 2. The United States Postal Inspection Service ("USPIS") installed a motion activated camera to capture theft at the identified collection box. *Id*. Subsequent review of photographs from the camera revealed members of the conspiracy using an "arrow key," USPS property, to open and raid the collection box. *Id*. at 2-5. Specifically, photographs from February 4, 2020, showed a member of the conspiracy exiting the passenger side-door of a vehicle, opening the collection box, emptying the contents into the backseat of the vehicle, getting back into the vehicle, and driving away. *Id*. at 2. Through information obtained from the photographs, law enforcement identified the owner of the vehicle as co-conspirator Miles Ward (now deceased). *Id*. at 3-4. Additional photographs from February 18, 2020 showed the same individual, Miles Ward, attempting to open the collection box, but eventually abandoning his attempt when the "arrow key"

became stuck in the lock; later, photographs showed co-conspirators Aaron Johnson and Jose Reyes dislodging the key using a lubricant and exiting the scene. *Id*. at 4. Law enforcement also obtained evidence, including photographs from ATMs, showing members of the conspiracy depositing altered, stolen checks so that they could subsequently withdraw the funds. *Id*. at 6-10.

On March 4, 2021, a search warrant was executed on an apartment, determined by law enforcement to have been rented by Johnson and Defendant using a fraudulent identification card and PII from stolen mail. The search revealed, among other items, approximately 200 stolen personal and business checks, six fraudulent identification cards, and a notebook containing PII.

As a result of the investigation, on April 7, 2021, Defendant was charged in a four-count indictment with conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349, conspiracy to commit mail theft, in violation of Title 18, United States Code, Sections 371 and 1708, and conspiracy to commit aggravated identify theft, in violation of Title 18 United States Code, Section 1028(f).[1] ECF No. 8 (indictment).

---

[1] Co-conspirator Aaron Johnson was charged in the same indictment with conspiracy to commit bank fraud, conspiracy to commit mail theft, conspiracy to commit aggravated identity theft, and unlawful possession of a United States Postal Service key. ECF No. 8. He pleaded guilty to conspiracy to commit bank fraud and mail theft, and, on October 15, 2021, was sentenced by this Court to 38 months' imprisonment and five years of supervised release. ECF Nos. 42, 55.

Co-conspirator Miles Ward was charged in the same indictment with conspiracy to commit bank fraud, mail theft, and aggravated identity theft; however, on May 13, 2021, the Court dismissed the charges against him as a result of his death. ECF Nos. 8, 34.

Co-conspirator Jose Reyes was charged in the same indictment with conspiracy to commit bank fraud, mail theft, and aggravated identity theft. ECF No. 8. He has not yet been arrested.

Co-conspirator Malcolm Ward was charged in a single-count criminal information with conspiracy to commit mail theft. *See* Case No. 1:21-cr-174, ECF No. 17. He pleaded guilty to the offense, and is set to be sentenced on December 3, 2021. *Id*., ECF No. 30.

On July 23, 2021, Defendant entered a plea agreement with the United States, pleaded guilty to Count Two of the indictment, conspiracy to commit mail theft, and stipulated to her conduct. ECF Nos. 46 (change of plea), 47 (Plea Agreement), 48 (Statement of Facts). Amongst other conduct, Defendant admitted that she had been involved in the conspiracy to commit mail theft from late 2019 through March 2021; that she had conspired to commit bank fraud during the same period; that she and co-defendant Johnson conspired to obtain and did obtain PII from mail she knew was stolen by members of the conspiracy using an unlawfully obtained USPS "arrow key;" that she and co-conspirators stole, stored, and altered checks, depositing them into financial institutions; that she used PII, specifically that of victim S.K., extracted from the stolen mail, on a fraudulent identification card with S.K.'s information alongside her own photograph; that she and co-defendant Johnson used victim P.W.'s PII, extracted from the stolen mail, to apply for and sign a rental agreement for an apartment in D.C., which they then used as a location to sort and store stolen mail and alter checks; and that she helped maintain a written record of PII gleaned from the stolen mail. ECF No. 48 at 1-5.

Overall, the scheme in which Defendant participated impacted 188 known victims; at least one victim, S.K., is specifically noted to be the victim of Defendant's conduct. ECF No. 64 at ¶ 10, 70. Victim S.K. was reimbursed by USAA. Thus, Defendant owes restitution in the amount of $4,900 to USAA, which she has agreed to pay.[2] *See* ECF No. 47 at 5. Under the Guidelines, Defendant is responsible for an intended and actual loss of $107,402. ECF No. 64 at ¶ 71.

---

[2] The United States notes that, while the plea agreement states S.K. is entitled to restitution, the proposed restitution order correctly states that restitution is owed to USAA.

## II. Guidelines Calculations

As the Court is aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 261 (2005). Thus, at sentencing, a court "must first calculate the Guidelines range" applicable to Defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also Gall v. United States*, 552 U.S. 38, 49-50 (2007). Here, the PSR accurately calculated the applicable Guidelines range as 10 to 16 months' imprisonment. ECF No. 64 at ¶ 117-118.

| | |
|---|---|
| Base Offense Level (§§ 2X1.1(a) and 2B1.1(a)(2)): | 6 |
| Enhancements: | |
| Loss Amount greater than $95,000, but less than $150,000 (§ 2B1.1(b)(1)(E)-(F)) | +8 |
| Offense involving 10 or more victims (§ 2B1.1(b)(2)(A)(i)) | +2 |
| Offense involving unauthorized transfer or use of means of identification unlawfully to produce or obtain other means of identification (§ 2B1.1(b)(11)(C)(i) | +2 |
| Mitigating Role (Minimal Participant) (§ 3B1.2(a)) | -4 |
| Acceptance of Responsibility: *Defendant is ineligible for an additional one-level decrease | -2 |
| **Total Offense Level** | **12** |

Based on the calculations above, Defendant's resulting Total Offense Level is 12. *Id*. at ¶ 92. Because Defendant is in Criminal History Category I, *id*. at ¶ 95, her resulting Guidelines range is 10 to 16 months' imprisonment.

In this case, the United States supports the adjustment pursuant to U.S.S.G. § 3B1.2(a), based on Defendant's role in the overall scheme. Under Section 3B1.2(a), "[i]f the defendant was a minimal participant in any criminal activity," they are eligible for an adjustment decreasing their

overall offense level by a maximum of four levels. U.S.S.G. § 3B1.2(a).[3] This adjustment is intended to cover defendants "who are plainly among the least culpable of those involved in the conduct of a group." *See* U.S.S.G. § 3B1.2 cmt. n. 4. "[T]he determination whether to apply [the adjustment] …is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." *See id*. at ¶ 3(C). In making that determination, the Court shall consider, amongst other factors, the degree to which the defendant (1) understood the scope and structure of the criminal activity; (2) participated in the planning or organizing of the criminal activity; (3) exercised decision-making authority or influenced the exercise of decision-making authority; (4) participated in the criminal activity, e.g., the acts the defendant performed and the defendant's discretion in performing those acts; and (5) stood to benefit. *Id*. at ¶ 3(C)(i)-(v).

As further described above, Defendant, relative to her co-defendants, participated narrowly in the mail fraud scheme. She was largely responsible for sorting and culling through mail that had already been stolen by co-conspirators and recording PII. She was not captured on camera stealing mail herself and, with the exception of the incident in which she and Johnson were arrested at the bank in Hagerstown, was not observed depositing fraudulent checks herself. It appears Defendant was influenced by her then boyfriend and co-defendant, Johnson, who was a leader/organizer in the conspiracy, to participate in the scheme. There is some evidence to suggest that their relationship involved intimate partner violence (commonly referred to as "domestic

---

[3] The Court could also find Defendant was a minor participant and decrease by two levels, *see* U.S.S.G. § 3B1.2(b) cmt. nt. 5 (applicable where a "defendant is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal") or find that her role fell between minor and minimal and decrease by three levels. U.S.S.G. § 3B1.2.

7

violence"). For these reasons, the United States believes a decrease of four levels under the provision is appropriate.

A term of one to five years' probation is authorized under the statute, *see* 18 U.S.C. §§ 371, 3559(a)(4) (classifying offense as Class D felony), 3561 (permitting a term of one to five years' probation for Class D felony), but not under the Guidelines. *See* U.S.S.G. § 5B1.1 cmt. n.2 ("Where the applicable guidelines range is in Zone C or D of the Sentencing Table…the guidelines do not authorize a sentence of probation."). While the Court "must use the Guidelines' advisory range as a starting point and initial benchmark," it is not bound by that range. *United States v. Abed*, 3 F.4th 104, 118 (4th Cir. 2021) (citing *Gall v. United States*, 552 U.S. 38, 49 (2207); *Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018). If a court "decides that a sentence outside the Guidelines advisory range is appropriate, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance," "give both both parties an opportunity to argue for whatever sentence they deem appropriate," and "consider all the factors under 18 U.S.C. § 3553(a)." *See Abed*, 3 F.4th at 118 (internal citations omitted). Thus, this Court has the authority to impose the sentence recommended herein.[4]

### III. Section 3553(a) Factors

After calculating the applicable Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in Title 18, United States Code, Section 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to Section 3553(a)'s enumerated factors, of particular relevance here are the "nature and

---

[4] Assuming the Court applies the four-level reduction based on mitigating role, the sentence requested would require an additional one-level reduction to render Defendant eligible for probation under the Guidelines (i.e., a total offense level of 11 would place Defendant in Zone B).

circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense" and provide "just punishment," the need "to promote respect for the law," the need to "avoid unwarranted sentence disparities," and the need for the sentence "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1), (a)(2)(C), (a)(2)(A), (a)(6), (a)(2)(B). As explained below, based on those factors, the proposed sentence of three years' probation, with a special condition requiring a term of home confinement, is warranted and reasonable for Defendant.

> A. *The proposed sentence would serve as just punishment for this defendant, given her minimal role in the offense, while reflecting the gravity and impact of the scheme.*

The impact of the criminal scheme in which Defendant participated was substantial—affecting over 100 victims, local residents and businesses, and financial institutions—and any sentence must reflect the gravity of such conduct. While Defendant was undoubtedly a knowing participant in the conspiracy, her role, as previously described, was narrow in comparison to her co-defendants, who organized the thefts, maintained control over the arrow key, stole mail, recruited mules and other members of the conspiracy, and altered and deposited fraudulent checks. Defendant was forthcoming about her role and has stated that she wants to make amends by paying any restitution ordered. ECF No. 64 at ¶ 80. A sentence of three years' probation, during which Defendant will be required to abide by the law and by this Court's orders, including a requirement that she serve home confinement, will serve to punish Defendant for the choices she made and for the toll they took on the community, promote respect for the law, and permit Defendant an opportunity to begin to uphold her promise to make better choices and stay away from negative influences. *Id*.

> B. *Defendant's history and characteristics, lack of a criminal record, and acceptance of responsibility, suggest the proposed sentence would be an adequate deterrent.*

Defendant is now approximately twenty-three years old. ECF No. 64 at ¶ 102. She was born and has spent most of her life in the greater Washington, D.C. area. *Id*. While Defendant reports she had a good childhood, it was not without hardships. Defendant was bounced back and forth between homes and caretakers. From birth until she was about five years old, Defendant was raised by her mother; her biological father, who was absent from her life, was addicted to drugs and passed away when she was around twelve years old. *Id*. From around the age of five to the age of twelve, Defendant and her siblings were raised by her mother's long-term boyfriend and his mother after being removed from her mother's home due to abuse. *Id*. at ¶ 102-103. From the ages of twelve to eighteen, she moved back into her mother's home, where, unfortunately, she was subject to additional verbal and physical abuse. *Id*. at ¶ 103. After high school, Defendant returned to live with the man she considers to be her father (her mother's former boyfriend). *Id*. He continues to support her today. Defendant also resided with co-defendant Aaron Johnson, her boyfriend at the time, from around 2019 to 2020. *Id*.

Despite the instability that seems to have accompanied much of her upbringing, Defendant reported that she successfully completed high school. *Id*. at ¶ 110. She also attended two different colleges for a total of about three years, but does not appear to have earned a degree from either. *Id*. at ¶ 111-112. Defendant reported she worked at a concession stand at Nationals Park for about three years, and, thereafter, worked as a self-employed nail technician from 2019 to May 2021. *Id*. at ¶ 113-115. She has been unemployed since around May 11, 2021. *Id*. at ¶ 113. Defendant appears to suffer from mental health-related issues, including anxiety and depression. *Id*. at ¶ 107. She reported that she developed a "daily habit" for alcohol and tested positive for marijuana twice (once the day her pre-trial supervision began, May 14, 2021) while on pre-trial release. *Id*. at ¶

10

108-109. The undersigned understands that she has not received substance abuse treatment to date. All reports indicate Defendant has performed well on pre-trial supervision. While she did submit one positive urinalysis for marijuana on July 23, 2021, she voluntarily admitted her use to her probation officer on July 21, 2021, and has had negative tests since then. *Id*. at ¶ 21.

Notably, apart from the instant offense, Defendant has had minimal contact with the criminal justice system. She has no juvenile or adult convictions, and has one pending matter in the General District Court for the City of Alexandria for unauthorized use of a motor vehicle. *Id*. at ¶ 93-94. In 2017, she was arrested and charged with second degree assault and fourth degree burglary, but was placed on the stet docket,[5] *id*. at ¶ 99, and in September 2020, she was extradited to resolve a fugitive from justice charge in the District Court for Washington County, Maryland.[6] *Id*. at ¶ 100. Defendant's minimal criminal history, coupled with her early acceptance of responsibility and performance on pre-trial supervision, suggests she has the capacity and willingness to conform her conduct to the law, and further suggests that three years' probation, effectively her first sentence, will be an effective deterrent.

> C. *The proposed sentence will help avoid sentencing disparities between members of the conspiracy.*

Finally, the United States submits that, in addition to the reasons set forth above, the proposed sentence will help ensure Defendant receives a sentence commensurate to her role in the conspiracy and consistent with the sentences imposed and proposed in her co-conspirators'

---

[5] According to the public docket (Case No. 0X00025221), the court received Defendant's community service report on June 19, 2018, and the case is closed. *See* https://casesearch.courts.state.md.us/casesearch/inquiryDetail.jis?caseId=D112CR20001576&loc=39&detailLoc=ODYCRIM (last visited November 23, 2021).

[6] The same public docket shows this matter (Case No. D-112-CR-20-001576) was closed on September 21, 2020.

11

matters. This Court sentenced co-defendant Aaron Johnson, a leader/organizer of the conspiracy, to 38 months' imprisonment, a downward departure from the Guidelines range of 46 to 57 months' imprisonment. ECF No. 55. The United States intends to request a sentence of one to two months' imprisonment in the separate case involving co-conspirator Malcolm Ward, who also played a smaller role in the overall scheme.[7]

In sum, in light of the nature and circumstances of the offense, Defendant's role in the conspiracy, Defendant's personal history and characteristics, and Defendant's minimal criminal history and conduct on pre-trial supervision, the United States submits that a sentence of three years' probation would be sufficient but not greater than necessary to achieve the goals of sentencing.

---

[7] The United States submitted a position paper on November 5, 2021. *See* Case No. 1:21-cr-174, ECF No. 27. The United States intends to amend its recommendation at sentencing and request a period of one to two months' imprisonment.

## IV. Conclusion

For the reasons stated, the United States respectfully requests that this Court impose a sentence of three years' supervised probation, with a special condition requiring Defendant serve home confinement, and order full restitution to the victim identified as of the time of sentencing.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____/s/_____

Caylee E. Campbell
Marc J. Birnbaum
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3834
Fax: (703) 299-3980
Email: Caylee.campbell2@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on November 24, 2021, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

                                                                                                /s/
                                                    Caylee E. Campbell
                                                    Special Assistant United States Attorney